1

2

3

4

5

6

7       **UNITED STATES DISTRICT COURT**

8       **NORTHERN DISTRICT OF CALIFORNIA**

9       **SAN JOSE DIVISION**

10

11      ALEX LOPEZ, et al.,                          Case No.  15-cv-00759-BLF

                    Plaintiffs,
12
                                                     **ORDER GRANTING IN PART AS**
13           v.                                      **MODIFIED AND DENYING IN PART**
                                                     **PLAINTIFFS' MOTION FOR FEES**
14      CIT BANK, N.A., et al.,                       **AND COSTS**

                    Defendants.                      [Re:  ECF No. 71]
15

16

17              This matter arises from a years-long credit reporting dispute between Plaintiffs, Alex and

18      Maria Lopez, and Defendants credit lender OneWest Bank, N.A. ("OneWest," now known as CIT

19      Bank, N.A.), loan servicer Ocwen Loan Servicing LLC ("Ocwen"), and credit reporting agency

20      Equifax Information Systems LLC ("Equifax").  At the heart of the dispute is Plaintiffs' allegation

21      that Defendants furnished and reported false credit information about Plaintiffs' credit accounts in

22      violation of the Fair Credit Report Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and California's

23      Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1, *et seq.*  Equifax

24      settled with Plaintiffs in January 2016.  Thereafter, the remaining two Defendants, OneWest and

25      Ocwen presented a settlement offer pursuant to Federal Rule of Civil Procedure 68, which

26      Plaintiffs accepted.  The only matter left unresolved is the issue of attorney's fees and costs for

27      Plaintiffs' counsel, Mr. Balam O. Letona.

28              Plaintiffs request an Order from this Court awarding reasonable fees and costs.  For the

United States District Court
Northern District of California

following reasons, the Court GRANTS AS MODIFIED Plaintiffs' request for reasonable

attorney's fees, and DENIES Plaintiffs' request for costs.[1]

## I.   BACKGROUND

In May 2004, Plaintiffs took out a $100,000 mortgage loan from OneWest on their

property.  Declaration of Alex Lopez in Support of Motion for Attorney Fees and Costs ("Lopez

Decl.," ECF No. 77), Exh. 1.  They experienced financial difficulties and eventually defaulted on

that loan in 2008.  *Id.* ¶ 3.  In March 2009, Plaintiffs filed a petition for Chapter 13 bankruptcy in

the Bankruptcy Court for the Northern District of California.  *Id.*  In accordance with the court-

ordered bankruptcy plan, Plaintiffs made periodic payments to a specified trustee until they

fulfilled their total obligation.  *Id.*  Upon completion of their plan payments, the bankruptcy court

granted a Chapter 13 discharge on June 13, 2012.  Declaration of Michael K. Mehr in Support of

Motion for Attorney Fees and Costs ("Mehr Decl.," ECF No. 78), Exhs. 2, 6.  The same day, the

bankruptcy court also entered an order discharging a junior mortgage debt and a junior mortgage

lien owned and serviced by OneWest.  *Id.*  The bankruptcy court entered judgment voiding the

OneWest lien, and on August 1, 2012, recorded the judgment with the Santa Cruz County

Recorder's Office.  *Id.* ¶ 3.

Plaintiffs thereafter learned that in spite of the discharge, OneWest continued to report to

credit reporting agencies, including Equifax, that Plaintiffs held an outstanding mortgage balance

of over $96,000 and were delinquent more than 180 days in the months post-discharge.  Lopez

Decl. ¶¶ 4, 14, 16; Mehr Decl. ¶¶ 4, 5.  When the debt was later transferred to Ocwen, Ocwen

similarly reported the amounts outstanding.  Lopez Decl. ¶¶ 28, 29; Mehr Decl. ¶¶ 10–13.

Plaintiffs attempted to resolve the matter informally with Defendants, but were unable to do so.

Mehr Decl. ¶ 13.

In February 2015, Plaintiffs filed an initial Complaint in the Northern District of

California, alleging that the manner in which OneWest, Ocwen, and Equifax reported the amount

---

[1] Because Equifax had already settled with Plaintiffs, this Motion for Fees and Costs involves a
dispute only as to Plaintiffs and the two remaining Defendants, OneWest and Ocwen.  Therefore,
as used in the balance of this Order, "Defendants" will refer to OneWest and Ocwen, and not
Equifax, unless otherwise specified.

United States District Court
Northern District of California

1   allegedly outstanding violated both the FCRA and the CCRAA.  (ECF No. 1).  Equifax filed an

2   answer, (ECF No. 20), while OneWest and Ocwen jointly filed a Rule 12(b)(6) motion to dismiss

3   the Complaint, (ECF No. 22).  Plaintiffs later filed a First Amended Complaint ("FAC"), (ECF

4   No. 24), and the Court entered an order denying the dismissal motion as moot, (ECF No. 29).

5   Upon stipulation of the parties, on November 11, 2013, Plaintiffs filed a Second Amended

6   Complaint ("SAC") against OneWest, Ocwen, and Equifax.  (ECF No. 52); *see also* Order

7   Granting Stipulation to File a Second Amended Complaint (ECF No. 51).

8          In her declaration, counsel for Ocwen and OneWest, Ms. Elena Kouvabina, attested that

9   her clients favored an early resolution to the case.  Declaration of Elena Kouvabina in Support of

10  Response to Plaintiffs' Motion for Attorney Fees ("Kouvabina Decl.," ECF No. 89) ¶ 3.

11  Defendants requested Plaintiffs to offer a settlement demand, but Plaintiffs declined to submit one

12  at the time.  *Id.*  The parties instead agreed to mediate the dispute.  *Id.*  They attended a July 20,

13  2015, court-sponsored mediation, but were unable to resolve the matter.  *Id.* ¶ 4; Declaration of

14  Balam O. Letona in Support of Motion for Attorney Fees and Costs ("Letona Decl.," ECF No. 73)

15  ¶ 19.

16         The case then proceeded through discovery.  *See* (ECF No. 39).  On July 31, 2015, Ocwen

17  and OneWest served written discovery requests on Plaintiffs to determine the evidentiary basis for

18  the damages Plaintiffs claimed.  Kouvabina Decl. ¶ 5.  However, as Ms. Kouvabina attested in her

19  declaration, Plaintiffs' responses "were evasive and boilerplate."  *Id.* ¶ 7.  Moreover, Ms.

20  Kouvabina explained that while Plaintiffs agreed to provide supplemental responses to

21  Defendants' discovery requests, those responses were never produced.  *Id.*

22         Similarly, Mr. Letona attested in his declaration that Defendants' Rule 26 initial

23  disclosures were deficient, as they failed to identify witnesses or even the proper designee for

24  depositions.  Supplemental Declaration of Balam O. Letona in Support of Reply to Opposition to

25  Motion for Attorney Fees and Costs ("Supplemental Letona Decl.," ECF No. 93) ¶¶ 4, 5.  Over the

26  course of a protracted meet and confer process, Plaintiffs tried unsuccessfully over six times to

27  meet in person with Ms. Kouvabina to coordinate the deposition of a former OneWest employee,

28  located in Michigan.  *Id.* ¶ 6.  The inability to meet and confer, as required by Magistrate Judge

United States District Court
Northern District of California

3

Lloyd's standing orders, was apparently so intractable that Plaintiffs eventually filed an *ex parte* application for permission to conduct the deposition by remote means.  *See* Order Granting Motion to Permit Depositions by Remote Means ("Deposition Order," ECF No. 55).  Judge Lloyd granted the application in an order dated December 18, 2015, in part because of Ms. Kouvabina's refusal to meet and confer in person.  *Id.* at 2–3.  The deposition occurred on January 20, 2016.  Supplemental Letona Decl. Exh. 2.

Toward the end of December 2015, the parties attempted to schedule a second mediation session to resolve the dispute.  *Id.* ¶ 12; Kouvabina Decl. ¶ 12.  However, they were unable to agree on terms and conditions for the proposed mediation, and the second session never occurred.  Supplemental Letona Decl. ¶ 12.

On January 8, 2016, Plaintiffs and Equifax settled the case, and filed a joint stipulation to dismiss Equifax from the matter.  *See* Order Granting Stipulation of Dismissal (ECF No. 66).

On February 8, 2016, Plaintiffs accepted a Rule 68 offer of judgment from Defendants OneWest and Ocwen that provided $50,000 in damages and injunctive relief.  Notice of Acceptance of Offer of Judgment (ECF No. 68).  The Court entered judgment the same day.  (ECF No. 70).

Thereafter, on February 22, 2015, Plaintiffs filed the present Motion for Fees and Costs.  Motion for Attorney Fees ("Mot.," ECF No. 71).  In support of the Motion, Plaintiffs offered nine declarations from six individuals, and numerous exhibits that included detailed billing records of Mr. Letona's work in the course of prosecuting this case.  *See* (ECF Nos. 73–78, 84, 93, 94).  In their Opposition, Defendants Ocwen and OneWest provided a declaration from Ms. Kouvabina, with attached exhibits.  Response re: Motion for Attorney Fees ("Opp.," ECF No. 89).  Plaintiffs filed a Reply on April 4, 2016.  Reply re: Motion for Attorney Fees ("Reply," ECF No. 92).  On April 18, 2016, the Court ordered counsel for Plaintiffs to submit a summary of hours to help clarify the time requested in Plaintiffs' Motion.  (ECF No. 95).  Mr. Letona submitted a response to the Order on April 19, 2016.  (ECF No. 96).  The Court heard arguments on the Motion on April 21, 2016, and took the matter under submission.  (ECF No. 97).

United States District Court
Northern District of California

## II.   LEGAL STANDARD

Under the FCRA, a successful party in an action to enforce liability under the statute may recover costs and reasonable attorney's fees.  *See* 15 U.S.C. § 1681n(a)(3) ("In the case of any successful action to enforce any liability under this section, [the court may award] the costs of the action together with reasonable attorney's fees as determined by the court," against "[a]ny person who willfully fails to comply" with the FCRA); 15 U.S.C. § 1681o(a)(2) (same for negligent violations of the FCRA).  The CCRAA similarly provides that "the prevailing plaintiffs in any action commenced under this section shall be entitled to recover court costs and reasonable attorney's fees."  *See* Cal. Civ. Code § 1785.31(d).

When evaluating a motion for reasonable attorneys' fees under the FCRA and CCRAA, the Court undertakes a two-step process.  *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  First, the Court calculates the presumptive fee award, also known as the "lodestar figure," by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate.  *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The Court "must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citation omitted).  "The reasonable hourly rate is that prevailing in the community for similar work."  *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).

Second, in "appropriate cases" the court may enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that were not taken into account in the initial lodestar calculation.  *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citation omitted).  The *Kerr* factors include, but are not limited to, the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the legal services properly, the preclusion of other employment by the attorney due to acceptance of the case, whether the fee is fixed or contingent, and the experience, reputation, and ability of the attorneys.  *Kerr*, 526 F.2d at 70.  The Ninth Circuit has cautioned that there is a "strong presumption" that the lodestar figure represents a reasonable fee and that adjustment upward or downward is "the exception rather than the rule."

1    *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1384 (9th Cir. 1990).

2    **III.    DISCUSSION**

3          The Court normally begins by considering whether or not an award of attorneys' fees is

4    proper.  However here, there is no dispute that Defendants' Rule 68 offer of judgment stipulated to

5    an award reasonable attorney's fees, and in any case, the FCRA and CCRAA permit Plaintiffs in

6    this case to collect fees upon a successful action to enforce liability under those statutes.  Instead,

7    the dispute centers around whether the amount of fees requested in this case is reasonable.

8          **A.    Amount of Fees**

9                 **i.    Reasonableness of Rates**

10         In determining whether the amount of fees requested in this case is reasonable, the Court

11   must first determine whether Plaintiffs' attorney's rates are reasonable.  To do so, the Court must

12   weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the

13   requested rates to prevailing market rates.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210

14   (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see also Blum*

15   *v. Stenson*, 465 U.S. 886, 886 (1984).  The relevant community for analyzing reasonable hourly

16   rates "is the forum in which the district court sits," here the Northern District of California.

17   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

18         Plaintiffs' attorney, Mr. Balam O. Letona, seeks fees at the hourly rate of $450.  Mot. at 6–

19   7.  In support of his request, Plaintiffs, who bear the burden of establishing that the rates are

20   reasonable, *see Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992), offer Mr. Letona's

21   self-attested declaration, as well as the declarations of three of Mr. Letona's colleagues

22   knowledgeable about his credentials and the prevailing hourly rates in Northern California for

23   attorneys who specialize in consumer protection litigation.  Defendants do not object to the

24   declarations, nor for that matter to Mr. Letona's $450 hourly rate.

25         The Court finds persuasive the papers submitted in support of Mr. Letona's hourly fee of

26   $450.  Mr. Letona's declaration explains in detail his role and work in prosecuting this matter.

27   Letona Decl. ¶¶15–33.   Mr. Letona has over thirteen years of experience litigating consumer

28   credit disputes, including those arising under the FCRA.  *Id.* ¶¶ 2–4.  His experience includes

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    work in about half a dozen class action suits on behalf of classes of consumers.  *Id.* ¶ 3.  Most

2    recently, Mr. Letona requested fees for his role in a class action lawsuit alleging violations of the

3    FCRA.  *See Holman v. Experian Info. Sols., Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL

4    7186207, at *1 (N.D. Cal. Dec. 12, 2014).  There, Judge Wilken found his hourly rate of $450 to

5    be reasonable given his education and legal experience.  *Id.* at *4–5.

6          The declarations from Mr. Letona's colleagues support this hourly rate.  Mr. Andrew J.

7    Ogilvie, a lawyer in San Francisco whose practice focuses on FCRA litigation, has worked with

8    Mr. Letona on a number of cases, including three class action suits.  Declaration of Andrew J.

9    Ogilvie in Support of Motion for Attorney Fees and Costs (ECF No. 74).  Mr. Scott Maurer,

10   Associate Clinical Professor of Law at Santa Clara Law School, stated that he believed Mr.

11   Letona's requested fee to be reasonable based on market rates in this geographical area, and his

12   knowledge of Mr. Letona's level of skill and experience.  Declaration of Scott Maurer in Support

13   of Motion for Attorney Fees and Costs (ECF No. 75).  Similarly, Mr. Ronald Wilcox, an attorney

14   with extensive experience as a consumer law attorney, explained that Mr. Letona's hourly rate is

15   reasonable "given his experience, qualifications and expertise in the representation of consumers

16   in debtor-creditor litigation."  Declaration of Ronald Wilcox in Support of Motion for Attorney

17   Fees and Costs (ECF No. 76).  The Court finds these papers in support of Mr. Letona's hourly rate

18   persuasive, and agrees that his fee of $450 per hour is reasonable.

19              **ii.    Reasonableness of Hours**

20          Next, the Court considers the reasonableness of the hours expended.  To determine

21   whether the hours requested are reasonable, the Court may not "uncritically" accept the plaintiff's

22   representations of time expended.  *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir.

23   1984).  The Court may reduce hours when documentation is inadequate, or when the requested

24   hours are redundant, excessive, or unnecessary.  *Hensley*, 461 U.S. at 433–34.

25          Mr. Letona requests fees for 236.8 hours expended in prosecuting this case.  *See*

26   Supplemental Declaration of Balam O. Letona in Support of Motion for Attorney Fees and Costs

27   (ECF No. 84) ¶ 6, Exh. 5.  In support of the request, Mr. Letona submits the following summary of

28   hours, divided into categories of work, and which the Court reproduces below:

7

| Task | Hours |
|---|---|
| Pre-Suit Investigation | 6.1 |
| Drafting Initial Complaint | 14.0 |
| Motion to Dismiss by Ocwen and OneWest | 2.3 |
| Drafting Amended Complaints | 3.4 – First Amended Complaint<br>7.8 – Second Amended Complaint |
| Discovery, Including Motions Related to Ocwen and OneWest | 136.3 |
| Case Management Conference and Filings | 5.4 |
| ADR and Settlement Discussions and Briefs | 7.0 |
| Miscellaneous (describe) | |
| Review and Evaluation of Documents Produced by Ocwen and OneWest | 19.8 |
| Rule 26 Meet and Confer & Preparation | 1.7 |
| Initial Disclosures Draft and Preparation | 7.5 |
| Research – Legal and Other | 13.5 |
| Meet and Confer to File Second Amended Complaint | 1.3 |
| Motion to Strike Amended Answer filed by Ocwen and OneWest | 8.6 |
| Miscellaneous Client Communication | 1.6 |
| Other Miscellaneous Communication & Review | 0.5 |
| **Total** | 236.8 |

Defendants argue that the amounts billed are unreasonable in light of "Mr. Letona's

United States District Court
Northern District of California

1    experience in consumer credit litigation and the straightforward nature of this dispute." Opp. at 4.

2    In support of this argument, Defendants point to certain categories of Mr. Letona's fee motion.

3    For instance, Defendants argue that the requested 14.0 hours "drafting a basic complaint" is

4    excessive, because the initial Complaint was "along the lines of what Plaintiffs' counsel has

5    undoubtedly drafted numerous times before." *Id.* Defendants also request a reduction in the hours

6    related to Plaintiffs' meet and confer regarding discovery responses, because they are "beyond

7    excessive," "given the simple nature of this dispute." *Id.* at 4–5. Similarly, Defendants argue that

8    the 19.7 hours spent preparing for the deposition is unreasonable because Mr. Letona "refused to

9    postpone [the deposition] so that the parties could mediate the dispute in late January." *Id.* at 5.

10    Defendants request the Court undertake an across-the-board reduction "because a review

11    of a sample of individual tasks reveals a pattern of overbilling by at least 50%." *Id.* at 6. In

12    support of the argument, Defendants cite to *Giovannoni v. Bidna & Keys*, No. 06-15640, 255

13    F. App'x 124, 126 (9th Cir. 2007), in which the Ninth Circuit affirmed the district court's decision

14    to reduce the plaintiff's counsel's fee request by half. However, the Ninth Circuit has consistently

15    cautioned against the use of across-the-board fee reductions—or as it described, the "meat axe

16    approach" to "trim[] the fat from a fee application"—when the record does not present

17    complicated or voluminous billing statements. *Gates*, 987 F.2d at 1399 (citations omitted).

18    Indeed, in cases where the underlying dispute is "not a complicated one," *Ferland v. Conrad*

19    *Credit Corp.*, 244 F.3d 1145, 1150 (9th Cir. 2001), nor the billing records "massive," *Gates*, 987

20    F.2d at 1399, across-the-board fee reductions are inappropriate, and the Court should instead

21    carefully inspect the billing records to assess the reasonableness of the hours requested.

22    Such is the case here. The Court declines Defendants' invitation to an across-the-board

23    reduction in hours for two reasons. First, this case does not present the sort of "voluminous" or

24    "massive fee application" that precludes the Court from considering, as a practical matter, the fees

25    requested on an hour-by-hour basis. Indeed, the parties' competing billing summaries, the

26    Plaintiffs' billing statements offered as exhibits to their fee application, as well as Plaintiffs'

27    response to the Court's April 18, 2016, order requesting clarification for Mr. Letona's fee request,

28    provide ample guidance for the Court to consider, by task and hour, the hours sought. Second, the

9

1   Court also declines to apply an across-the-board reduction of Plaintiffs' fees because, besides

2   Defendants' general contention that the hours billed are excessive, they have given no justification

3   for why, specifically, a fifty percent reduction is warranted.  Defendants argue that Plaintiffs' fee

4   request "reveals a pattern of overbilling by at least 50% . . . as compared to what someone of [Mr.

5   Letona's] experience and hourly rate would have billed his clients," Opp. at 6, but provide no such

6   evidence at all for that comparison.  In light of the "heightened scrutiny" for across-the-board fee

7   reductions, *Gates*, 987 F.2d at 1400, Defendants give short shrift to justify why this case merits an

8   across-the-board reduction generally, and why that reduction should be fifty percent, specifically.

9   Accordingly, although the Court recognizes the utility in generalized fee reductions, it declines to

10  employ that method in this case to reach Plaintiffs' reasonable hours.

11          In considering the reasonableness of the hours requested, the Court makes the following

12  observations.  Mr. Letona is a consumer protection attorney with over a decade of experience

13  litigating plaintiff-side consumer disputes.  Letona Decl. ¶¶ 2–6.  His representative matters

14  include involvement in about half a dozen class action lawsuits brought under various consumer

15  protection statutes, including California's Rees-Levering Motor Vehicle Sales Act, California's

16  Unfair Competition Law, and the FCRA.  *Id.* ¶¶ 8,9.  Given Mr. Letona's areas of expertise and

17  extensive experience litigating consumer protection disputes, the Court expects that the hours he

18  bills in prosecuting this case reflect a discerning judgment and level of efficiency higher than

19  would an attorney otherwise unfamiliar with this subject matter.  This is especially so in light of

20  the fact that this case—when compared to Mr. Letona's previous representative matters—is

21  relatively uncomplicated and presents only four causes of action brought under two statutes,

22  against three parties.

23          That said, the Court also recognizes that here, counsel for Defendants mounted a stalwart

24  defense over the course of this dispute.  The litigation is ill-served when, for instance, a party fails

25  to properly make initial disclosures as required under Rule 26.  *See* Supplemental Letona Decl.

26  ¶¶ 4, 5.  As counsel are undoubtedly aware, the failure to disclose witnesses or other discoverable

27  information does not hide the ball completely, but only makes it more difficult for opposing

28  counsel to eventually discover it.  Similarly, the lack of a good-faith basis to not meet in person

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    about outstanding discovery disputes before filing joint reports unnecessarily expends time and

2    effort for all the parties involved.  And in this case, Defendants' counsel's refusal to meet face-to-

3    face was in violation of Judge Lloyd's standing orders.  Deposition Order at 2–3.  Moreover here,

4    when the parties were eventually able to meet to depose a witness, Ms. Kouvabina at times

5    interposed every other question with long-speaking and coaching objections, to the confusion of

6    not just Plaintiffs' counsel but also the witness.  *See, e.g.*, Supplemental Letona Decl., Exh. 2 at

7    4:11–5:13; 8:10–9:13; 9:19–11:9.  Such tactics needlessly prolong the course of litigation and

8    balloon the costs of prosecuting a case—even for a case as relatively uncomplicated as the one

9    here.

10        With this in mind, the Court has reviewed all of the papers submitted, and makes the

11   following modifications to the hours requested.

12        a.  Initial Complaint

13        Plaintiffs request 14.0 hours for drafting the initial Complaint.  The Court finds this time

14   unreasonable.  As discussed above, this case presents a relatively straightforward dispute

15   regarding the alleged false reporting of credit information.  The Complaint pleads only four causes

16   of action based on the FCRA and the CCRAA against three defendants, OneWest, Ocwen, and

17   Equifax.  In addition, much of the facts alleged in the Complaint occurred during the time when

18   Plaintiffs were represented by prior counsel in their Chapter 13 bankruptcy.  Presumably, the

19   records from prior counsel that were necessary to draft this initial Complaint were not difficult to

20   obtain.  Given the low degree of complexity presented in this case, the records available from

21   Plaintiffs' prior litigation, and Mr. Letona's own experience in litigating consumer credit disputes,

22   the Court finds the 14.0 hours requested for drafting the initial Complaint excessive.  The Court

23   decreases the hours requested by 7.0 hours, for a total of 7.0 hours.

24        b.  Second Amended Complaint

25        Next, Plaintiffs request 7.8 hours for drafting the SAC.  In reviewing the SAC in

26   comparison with the FAC and initial Complaint, the Court finds these requested hours also to be

27   unreasonable.  No new claims are added to the SAC; indeed, it still pleads the same four causes of

28   action against the same three Defendants.  The only difference between the SAC and FAC is that

1    the SAC adds a handful of new allegations regarding two other credit reporting agencies

2    previously unidentified in the FAC or initial Complaint.  The Court finds that this minimal

3    addition of new allegations does not warrant the hours requested from Plaintiffs' counsel.  The

4    Court decreases the request by 4.8 hours, for a total of 3.0 hours.

5                        c.   Discovery-Related Hours

6         By far the lion's share of hours requested by Plaintiffs' counsel relates to discovery.  Here,

7    Mr. Letona requests 136.3 hours, encompassing work for motions related to Defendants OneWest

8    and Ocwen.

9         Of this sum, 34.5 hours are attributed to time spent drafting discovery responses to

10   Defendants' requests, and 34.1 hours for time spent reviewing Defendants' discovery responses to

11   Plaintiffs' requests.  The Court recognizes that the time Mr. Letona spent on these tasks may have

12   been prolonged to some degree by Defendants' position during discovery.  However, even with

13   that in mind, the Court finds the combined 68.6 hours to be an inordinate amount of time spent on

14   these two routine discovery tasks.  Given Mr. Letona's subject matter expertise in consumer credit

15   disputes, the Court presumes he is able to capably and efficiently review the records related to

16   Plaintiffs' consumer credit, as provided by Defendants.  Similarly, the responses to Defendants'

17   discovery requests are unreasonable given the fact that they were nearly identical for each

18   Plaintiff, were mostly boilerplate, and no privilege log was produced in this case.  *See* Kouvabina

19   Decl. ¶ 6.  The Court therefore reduces the 34.5 hours by 15.0 hours, for a total of 19.5 hours; the

20   Court reduces the 34.1 hours by 10.0 hours, for a total of 24.1 hours.

21        Plaintiffs request 7.0 hours for time spent meeting with clients and supplementing

22   responses to Defendants' discovery requests.  However, had Plaintiffs provided these responses on

23   time when they were due, no supplementation would have been necessary.  Accordingly, the Court

24   reduces the 7.0 hours to 0.0 hours.

25        Next, Plaintiffs request 19.7 hours to prepare for the deposition of the former OneWest

26   employee.  Over two and a half full work days spent preparing for a single deposition is simply

27   not reasonable in this circumstance.  Mr. Letona, a seasoned litigator, should have been able to

28   prepare for this deposition in a fraction of that time.  The Court reduces this request by 11.7 hours,

1    for a total of 8.0 hours.

2                    d.   Document Review and Initial Disclosures

3           Plaintiffs seek 19.8 hours related to reviewing and evaluating documents produced by

4    Ocwen and OneWest, and 7.5 hours for time spent on preparing and drafting initial disclosures.

5    Again, as discussed above, Mr. Letona is expected to prosecute his cases with discerning judgment

6    and a level of efficiency higher than would an attorney otherwise unfamiliar with this subject

7    matter.  Nothing indicates that here, the dispute presented any novel consumer credit issue.  An

8    expert in consumer protection disputes, Mr. Letona should have been able to efficiently review the

9    documents produced, and draft disclosures related to this litigation.  The Court finds these hours to

10   be excessive, and reduces the 19.8 hours by 4.0 hours, for a total of 15.8 hours, and reduces the

11   7.5 hours by 1.5 hours, for a total of 6.0 hours.

12                   e.   Clerical Tasks

13          Finally, Defendant argues that a further reduction in hours is warranted because "Plaintiffs'

14   counsel's billing records are either clerical tasks . . . or are so vague and ambiguous that it is

15   difficult to understand and evaluate their nature."  Opp. at 6.  As to the portions of Mr. Letona's

16   hours spent doing tasks that are clerical, the Court agrees with Defendants, and finds that a

17   reduction of 0.7 hours is warranted.  Plaintiffs' counsel is expected to exercise billing judgment.

18   Mr. Letona's effort spent on these routine administrative tasks—at the rate of $450 per hour—is

19   not a judicious use of his time or of his clients' money.  The Court therefore reduces the 0.7 hours

20   sought for clerical tasks by 0.7 hours, for a total of 0.0 hours.

21          However, as to the hours that Defendants claim are "vague and ambiguous," the Court

22   notes that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing

23   perfection.  So trial courts may take into account their overall sense of a suit, and may use

24   estimates in calculating and allocating an attorney's time."  *Fox v. Vice*, 563 U.S. 826, 838 (2011);

25   *see also Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427

26   (9th Cir. 2000) ("Plaintiff's counsel . . . is not required to record in great detail how each minute of

27   his time was expended.  But at least counsel should identify the general subject matter of his time

28   expenditures." (citation omitted)).  Here, Mr. Letona clearly meets this standard.  He clarified the

United States District Court
Northern District of California

13

hours he requested by concisely detailing the time spent on each of the sixteen discrete tasks he identified, and by supporting those hours with ample documented evidence.  The Court finds these proofs sufficient for purposes of this fees motion.

f.  Hours Attributable to Equifax

As a final matter, Defendants argue that Plaintiffs' requested hours should be reduced to reflect Mr. Letona's work attributable to Equifax, which had already settled with Plaintiffs in advance.  However, Mr. Letona has already resubmitted modified records reflecting billing hours excluding work that had included Equifax.  *See* (ECF No. 84), Exh. 5.  As Mr. Letona attested in his declaration, those billing records have been reduced by one-third.  *Id.* ¶¶ 4, 5.  Mr. Letona supports these reductions with billing statements as evidence.  *Id.* Exh. 5.  The Court finds these reductions in hours reasonable.

In all, combining the above reductions results in an exclusion of 61.7 hours from Mr. Letona's request for 236.8 hours, for a total award of 175.1 hours.  The Court finds these hours to be reasonable, and summarizes them in the following table, with modifications in bold:

| Task | Hours |
| --- | --- |
| Pre-Suit Investigation | 6.1 |
| Drafting Initial Complaint | **7.0** |
| Motion to Dismiss by Ocwen and OneWest | 2.3 |
| Drafting Amended Complaints | 3.4 – First Amended Complaint<br>**3.0** – Second Amended Complaint |
| Discovery, Including Motions Related to Ocwen and OneWest | **91.9** |
| Case Management Conferences and Filings | 5.4 |
| ADR and Settlement Discussions and Briefs | 7.0 |
| Miscellaneous (describe) | |
|     Review and Evaluation of Documents | **15.8** |

United States District Court
Northern District of California

| | |
|---|---|
| Produced by Ocwen and OneWest | |
| Rule 26 Meet and Confer & Preparation | 1.7 |
| Initial Disclosures Draft and Preparation | **6.0** |
| Research – Legal and Other | 13.5 |
| Meet and Confer to File Second Amended Complaint | 1.3 |
| Motion to Strike Amended Answer filed by Ocwen and OneWest | 8.6 |
| Miscellaneous Client Communication | 1.6 |
| Other Miscellaneous Communication & Review | 0.5 |
| **Total** | **175.1** |

Accordingly, in carefully reviewing all the papers submitted with this Motion, the Court finds that a reasonable amount of time spent prosecuting this case is 175.1 hours.

### iii.    Lodestar Calculation

Next, the Court must determine the lodestar figure by multiplying the hourly rate with the number of reasonable hours spent on this case.  Based on the foregoing discussion, the total lodestar calculation is summarized in the following table.

| Mr. Letona's Hourly Rate | Hours Requested | Hours Excluded | Hours Awarded | Total Tentatively Awarded |
|---|---|---|---|---|
| $450 | 236.8 | 61.7 | 175.1 | $78,795 |

### iv.    Lodestar Multiplier

Plaintiffs have not requested a lodestar multiplier, and have therefore not rebutted the "strong presumption" that the lodestar figure represents a reasonable fee.  *See D'Emanuele*, 904 F.2d at 1384 (9th Cir. 1990) ("Such upward or downward adjustments are the exception rather

15

United States District Court
Northern District of California

United States District Court
Northern District of California

1    than the rule since the lodestar amount is presumed to constitute a reasonable fee." (citing *United*

2    *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990); *Jordan v.*

3    *Multnomah Cty.*, 815 F.2d 1258, 1262 9th Cir. 1987)); *see also Ketchum*, 24 Cal. 4th at 1138

4    ("[T]he party seeking a fee enhancement bears the burden of proof.").  The Court therefore finds

5    the lodestar figure to be reasonable, and not subject to enhancements or reductions.

6          In opposition to this Motion, Defendants argue that Plaintiffs' lodestar figure should be

7    reduced because the request for fees is disproportionate to their eventual recovery.  Opp. at 6–8.

8    Specifically, Defendants argue that the lodestar should be reduced by a magnitude proportional to

9    the $50,000 that the case ultimately settled for in the Rule 68 offer of judgment.  *Id.*  Citing to an

10   out-of-district case, *Valentine v. Equifax Info. Servs. LLC*, 543 F. Supp. 2d 1232, 1236 (D. Or.

11   2008), Defendants argue that "the lack of evidence of any concrete harm suffered by Plaintiffs,"

12   and that "[n]o finding of liability was made by the Court in this case by means of a verdict, finding

13   of fact, or other ruling," warrant a reduction in kind of the lodestar figure, even after reaching Mr.

14   Letona's reasonable hourly rate and the reasonable number of hours expended here.  *See* Opp. at

15   6–8.

16         Defendants' reliance on *Valentine* is misplaced and uninstructive in this case.  In

17   *Valentine*, the District of Oregon found that a twenty percent reduction of the lodestar amount was

18   justified because of the plaintiff's only partial success in litigating that matter.  *Id.* ("I find that

19   because plaintiff emphasized her punitive damages claim but was unsuccessful in obtaining relief

20   on that claim, an across-the-board reduction of the lodestar is appropriate.").  The court therefore

21   awarded the plaintiff a reduced fee, "in light of the jury verdict."  *Id.*  This case, however, presents

22   no such circumstance.  The Rule 68 offer of judgment is a total resolution of all claims in this

23   case, and Plaintiffs' counsel is entitled to all reasonable fees in connection with prosecuting this

24   matter.  *Cf. Hensley*, 461 U.S. at 436 (stating that reductions may be appropriate where the

25   plaintiff achieves only partial or limited success).

26         In any case, the Supreme Court has also held that fees may not be reduced on the basis of

27   "proportionality" alone.  *City of Riverside v. Rivera*, 477 U.S. 561 (1986).  As it explained in

28   *Rivera*, "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of

United States District Court
Northern District of California

1  attorney's fees to be awarded," but only if it is "one of many factors that a court . . . consider[s] in

2  calculating an award of attorney's fees."  *Id.* at 574.  *Rivera* expressly rejected the notion that

3  attorney's fees "should necessarily be proportionate to the amount of damages . . . actually

4  recover[ed]."  *Id.*; *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002).

5  Here, in light of the $50,000 settlement and the broad injunctive relief in this case, the Court

6  cannot say that the fees awarded are unjustified.  *See, e.g.*, *Garcia v. Resurgent Capital Servs.,*

7  *L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *10 (N.D. Cal. Aug. 30, 2012) (describing the

8  plaintiff's $50,000 recovery in a Fair Debt Practices Collection Act dispute as an "excellent

9  result," and rejecting the defendants' argument to reduce the $213,606.65 fee award based on

10  "proportionality").  The Court therefore rejects Defendants' argument that Plaintiffs' lodestar

11  figure should be reduced based on the amount for which this matter eventually settled.

12          Accordingly, for the reasons discussed above, the Court GRANTS AS MODIFIED

13  Plaintiffs' Motion for attorney's fees in the amount of $78,795.

14          **v.    Mediation Statements**

15          As a final matter, Defendants argue that they should be permitted to disclose statements

16  made in the course of the parties' July 20, 2015, court-sponsored mediation to show the Court

17  "that litigation of this case past mediation resulted in no added value to Plaintiffs."  *Id.* at 8.

18          Alternative Dispute Resolution Local Rule 6–12 sets forth a general prohibition on

19  disclosure of information from the court-sponsored mediation, subject to narrow exceptions

20  permitting disclosure.  The Commentary to the Rule explains that limited circumstances may

21  nonetheless exist in which the general prohibition on disclosure may give way to a countervailing

22  need to reveal the information.  *See* ADR L.R. 6–12, Commentary (stating that "[t]he law may

23  provide some limited circumstances in which the need for disclosure outweighs the importance of

24  protecting the confidentiality of a mediation").  Such circumstances include threats of death or

25  substantial bodily injury, use of mediation to commit a felony, right to effective cross examination

26  in a quasi-criminal proceeding, duty to report lawyer misconduct, and the need to prevent manifest

27  injustice.  *See id.*  A court presented with such a circumstance to disclose mediation statements

28  may engage in a balancing test:  "Accordingly, after application of legal tests which are

United States District Court
Northern District of California

1    appropriately sensitive to the policies supporting the confidentiality of mediation proceedings, the

2    court may consider whether the interest in mediation confidentiality outweighs the asserted need

3    for disclosure." *See id.*

4         Defendants argue that here, they should be permitted to inform the Court of the amount

5    Plaintiffs demanded during settlement negotiations because "disclosure is 'need[ed] to prevent

6    manifest injustice' resulting from Defendants' inability to demonstrate to the Court that litigation

7    of this case past mediation resulted in no added value to Plaintiffs (as opposed to their counsel)."

8    Opp. at 8.  As support, they rely on *Munoz v. J.C. Penney Corp.*, 2009 WL 975846, at *3–4 (C.D.

9    Cal. Apr. 9, 2009), in which the district court permitted the disclosure of settlement

10   communications.  However, that case bears little resemblance to the circumstances here, as the

11   disclosure permitted in *Munoz* served the narrow purpose of establishing removal jurisdiction.  *Id.*

12   at *3.  *Munoz* permitted this exception to the mediation privilege in the context of Federal Rule of

13   Evidence 408, which has been interpreted to permit the disclosure of mediation statements

14   "simply to show that the amount in controversy is met," and not "used to prove liability."  *Id.* at

15   *3–4 (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2002); *Babasa v. Lenscrafters, Inc.*,

16   498 F.3d 972 (9th Cir. 2007)).  Here, unlike in *Munoz*, the request for disclosure is premised on

17   ADR Local Rule 6-12(b), and goes directly to the heart of the substance in this Motion.

18   Defendants' reliance on *Munoz* as support for their argument that disclosure of mediation

19   statements is necessary is inapposite.

20        Having considered Defendants' arguments, the Court summarily rejects Defendants'

21   request to disclose Plaintiffs' mediation statements.  The "need to prevent manifest injustice"

22   exception to the mediation privilege is not a catch-all for parties to invoke whenever they feel the

23   disclosure of mediation statements may serve their interests.  Defendants have given no persuasive

24   justification for why, in this case, manifest injustice would prevail in the absence of permission

25   from the Court to disclose Plaintiffs' mediation statements.  The desire to reduce Defendants'

26   exposure in this fee motion is no justification at all for the exception, and it certainly falls far short

27   of an interest that outweighs the purposes well-served by mediation confidentiality.  Accordingly,

28   the Court denies Defendants' request to disclose statements made in the course of the parties' July

1    20, 2015, mediation.

2        **B.    Costs**

3        In addition, Plaintiffs request costs in the amount of $2,211.03 for prosecuting this case.

4    Reply at 10.  Defendants argue that Plaintiffs' request should be denied because Mr. Letona failed

5    to file a bill of costs pursuant to Civil Local Rule 54-1.  Opp. at 10.  Plaintiffs respond to this

6    oversight by explaining that "[c]ounsel believed that both the FCRA and the [CCRAA] allows for

7    the recovery of expenses obviating the need for a cost memo," and that should the Court find the

8    need for a bill of costs, Plaintiffs should be granted leave to file one.  Reply at 10.

9        This District's Civil Local Rule 54-1(a) provides that "[n]o later than 14 days after entry of

10   judgment or order under which costs may be claimed, a prevailing party claiming taxable costs

11   must serve and file a bill of costs."  In addition, subsection (c) addresses the waiver of costs:

12   "Any party who fails to file a bill of costs within the time period provided by this rule will be

13   deemed to have waived costs."  Civ. L.R. 54-1(c).  In an FCRA case, the Ninth Circuit has

14   affirmed a district court's order denying a party's request for costs because of the failure to timely

15   file a bill of costs, as was required under the fourteen-day timeline set forth in the district's civil

16   local rules.  *See Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 582 (9th Cir. 2010);

17   *accord Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (affirming district court's partial denial of

18   costs due to untimely filing a bill of costs under the civil local rules).  In *Lytle*, the Ninth Circuit

19   explained that "[l]ack of diligence by [the plaintiff's] counsel led to the late filing, and [the

20   plaintiff] cites no persuasive authority that the local rule should not have been enforced."  *Id.*

21   Courts in this district have held the same.  *See, e.g.*, *Stein v. Pac. Bell*, No. C 00 2915 SI, 2007 WL

22   2221054, at *1 (N.D. Cal. Aug. 1, 2007) (explaining that the defendant's failure to timely file a

23   bill of costs was deemed a waiver); *San Francisco Bay Area Rapid Transit Dist. v. Spencer*,

24   No. C 04-04632 SI, 2007 WL 1450350, at *14 (N.D. Cal. May 14, 2007) (denying a party's

25   request for $122,966.24 in costs because it failed to timely file a bill of costs).

26       Mr. Letona admits to a lack of diligence as his reason for failing to timely file a bill of

27   costs.  Reply at 10.  But, that reason by itself is not sufficient to relax the fourteen-day requirement

28   mandated by Civil Local Rule 54-2(a).  Moreover, he relies on a Central District of California case

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1   to argue that "out-of-pocket expenses normally charged to a client may be recoverable even if not

2   taxable." *Id.* (citing *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. CV 07-8298 ABC

3   (RZX), 2010 WL 11404472, at *2 (C.D. Cal. June 17, 2010)).  But, *Wyatt* lends no support to Mr.

4   Letona's argument because that case involved the award of statutorily-authorized costs for both

5   taxable and non-taxable litigation expenses, an issue not present here. *Id.* at *1–2.  In addition,

6   *Wyatt* contemplated the applicability of fee-shifting provisions in three separate statutes—the

7   Copyright Act, the Lanham Act, and the California Trade Secrets Act—all of which are, of course,

8   not at issue here. *Id.*  Because Plaintiffs fail to cite any persuasive authority why the local rules

9   should not be enforced, the request for costs is DENIED.

10   **IV.    ORDER**

11          For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Fees and

12   Costs is GRANTED IN PART AS MODIFIED, and DENIED IN PART.  Plaintiffs shall recover

13   attorney's fees in the amount of $78,795; Plaintiffs' request for costs is DENIED.

14

15   Dated:  June 7, 2016

16                                                     _____

17                                                     BETH LABSON FREEMAN
                                                       United States District Judge
18

19

20

21

22

23

24

25

26

27

28